IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SACOYA M.,                      )
                                )
          Plaintiff,            )
                                )
     v.                         )     1:22CV1084
                                )
MARTIN J. O'MALLEY,             )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.[1]         )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sacoya M., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 13 (Commissioner's Brief)). For

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 163-76, 178-84), alleging a disability onset date of October 31, 2014 (see Tr. 169, 178).[3] Upon denial of that application initially (Tr. 55-63, 75-78) and on reconsideration (Tr. 64-70, 82-84), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 85-87). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 29-54.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-28.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 2-7, 160-62, 246), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since October 23, 2020, the application date.

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 8 at 1.)

[3] Notwithstanding Plaintiff's alleged onset date of October 31, 2014, Plaintiff lacked eligibility for SSI benefits until her application date of October 23, 2020 (see Tr. 163, 178). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

. . .

    2. [Plaintiff] has the following severe impairments: arthropathies; obesity; [and] osteoarthritis and allied disorders.

. . .

    3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

    4. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except [she] can stand and/or walk with normal breaks for a total of two hours.  She can sit were [sic] normal breaks for total [sic] of six hours in an eight-hour day.  She can occasionally climb ramps and stairs, [and] occasionally stoop and kneel.  [She] cannot climb ladders, ropes, or scaffolds, and cannot crouch or crawl.

. . .

    5. [Plaintiff] has no past relevant work.

. . .

    9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

    10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since October 23, 2020, the date the application was filed.

(Tr. 18-24 (bold font, stray commas, and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award

---

[4] The Act "comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

---

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

## B. Assignment of Error

In Plaintiff's first and only assignment of error, she argues that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to sit when formulating the RFC." (Docket Entry 9 at 4.) In particular, Plaintiff highlights her own statements (see id. (citing Tr. 35-37, 40, 42-43)) as well as the medical evidence (see id. at 4-5 (citing Tr. 509, 546, 767-68, 775, 781, 784, 818-19, 835, 842, 863, 949, 990, 1004, 1011, 1034-35, 1040)) that she believes supports greater limitations on her ability to sit, and argues that, "[d]espite th[at] testimony and medical evidence, the ALJ included only a limitation to sedentary work in the RFC, meaning that [Plaintiff wa]s expected to sit for a total of 6 hours in the 8-hour workday with only normal breaks" (id. at 6 (citing Tr. 19)). According to

---

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Plaintiff, "[t]he ALJ acknowledge[d] that [Plaintiff] continue[d] to have symptoms that [we]re 'less than optimal'" (id. (quoting Tr. 20)), but "d[id] not explain how [Plaintiff] c[ould] perform the full range of sitting at the sedentary range of exertion with th[o]se less than optimal symptoms" (id. (citing Tr. 20-22) (unmatched quotation mark omitted)). In that regard, Plaintiff notes that "[t]he calculation of frequency of position change (much like the calculation of time off task) can be outcome determinative." (Id. at 7 (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished)).)

In Plaintiff's view, "'[h]aving met [her] threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [she wa]s entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that [her] pain [wa]s so continuous and/or so severe as to prevent [her] from working a full eight hour day.'" (Id. at 7 (quoting Hines, 453 F.3d at 565).) Plaintiff additionally emphasizes that "[t]he [United States Court of Appeals for the] Fourth Circuit . . . in *Dowling* . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting, especially in light of a sedentary RFC, and, further, that ALJs have to perform a function-by-function analysis of contested and relevant

9

functions." (Id. (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) Plaintiff ultimately contends that "the case must be remanded for . . . the ALJ [to] perform a proper function-by-function analysis of [Plaintiff]'s ability to perform the contested functions in this case (namely, sitting), both at one time and total in a workday, and then question the VE regarding the vocational effects of th[ose] . . . findings." (Id. at 8.) Those contentions lack merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)

10

(internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly

11

assess Plaintiff's ability to sit on a function-by-function basis (see Tr. 19-23); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and her findings that Plaintiff's arthropathies and osteoarthritis (A) qualified as severe impairments at step two of the SEP (see Tr. 18), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of sitting (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 19).

As an initial matter, to the extent Plaintiff intends her contention that she could "rely exclusively on subjective evidence to prove . . . that [her] pain [wa]s so continuous and/or so severe as to prevent [her] from working a full eight hour day'" (Docket Entry 9 at 7 (quoting Hines, 453 F.3d at 565)) to mean that the ALJ erred by considering objective medical evidence in analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms, such an argument misses the mark. Although the Fourth Circuit recently "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020), long-standing cases containing the substance of that holding, such as Craig and Hines

12

(among others), clarify that, "[a]lthough a claimant's allegations about h[is symptoms] may not be discredited <u>solely</u> because they are not substantiated by <u>objective evidence of the [symptoms themselves]</u> or [their] severity, they need not be accepted to the extent they are inconsistent with the available evidence, including <u>objective evidence of the underlying impairment</u>, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers," <u>Craig</u>, 76 F.3d at 595 (emphasis added); <u>see also</u> <u>Hines</u>, 453 F.3d at 565 n.3 (quoting <u>Craig</u>, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ <u>may</u> choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, <u>Arakas</u>, <u>Craig</u>, and <u>Hines</u> do not <u>compel</u> ALJs to consider <u>only</u> subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. <u>See</u> 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) <u>must</u> be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); <u>see also</u> 20 C.F.R. § 416.929(c) (directing ALJs to assess a

13

claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources). Here, in compliance with Arakas, Hines, and Craig, the ALJ considered the objective medical evidence as one part of her evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms, as the ALJ also considered Plaintiff's "conservative" treatment history (Tr. 21) and the opinion evidence of record (see Tr. 22-23).

Turning to Plaintiff's assertions regarding the function-by-function analysis, those assertions fall short because the ALJ's evaluation of Plaintiff's subjective symptom reporting elucidates the ALJ's RFC findings regarding Plaintiff's ability to sit. In that regard, the ALJ explicitly acknowledged Plaintiff's statements reporting pain in her right hip "described [as] burning, tingling, and clicking," "pain and tenderness in [her] tailbone and lower back . . . exacerbated by physical activity, including walking," "tingling in her toes, and weakness and pain in her knees." (Tr. 20 (referencing Tr. 35-39).) The ALJ further recognized Plaintiff's testimony that "she cannot sit for longer than a few minutes before she has to get up and move around" (id. (referencing Tr. 42)), and "that sitting is very uncomfortable" (id. (referencing Tr. 42)). Although the ALJ recognized that

14

Plaintiff's "treatment records note[d] less than optimal symptoms, such as tenderness and pain" (id.), the ALJ thereafter found that the record as a whole d[id] not suggest limitations that would preclude [Plaintiff] from all competitive work activity" (id.), and thus found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id.). Notably, Plaintiff did not challenge the ALJ's analysis of Plaintiff's subjective symptom reporting. (See Docket Entry 9.)

Beyond the ALJ's analysis of Plaintiff's subjective symptoms reports, the ALJ's evaluation of the opinion evidence provides further support for the sitting allowance in the RFC. In particular, the ALJ found "persuasive" the opinions of the state agency medical consultants that Plaintiff remained capable of up to six hours of sitting. (Tr. 22 (referencing Tr. 60, 68).) In that regard, the ALJ found the consultants' opinions "supported by the evidence upon which [the] consultant[s] relied, which noted limitations due to the combined effects of obesity, lumbar pain complaints, and hip degenerative changes" (id.), and "consistent with the evidence as a whole, which note[d] stiff gait that favored the right, hip pain, positive straight leg raising, [] decreased right lower extremity muscle strength, and class III severe

15

obesity" (Tr. 22-23).[8]  The ALJ also found the opinion of consultative medical examiner Dr. Steven E. Landau that "[Plaintiff] could . . . sit for six hours . . . persuasive in part[ a]s supported by [Dr. Landau's] examination" and "consistent with the evidence as a whole, which note[d] pain complaints, hip dysplasia, [and] right knee arthritis." (Tr. 22.)[9] Significantly, Plaintiff does not point the Court to any opinions from her treating medical providers that Plaintiff could not sit for the two-hour intervals required of sedentary work. (<u>See</u> Docket Entry 9.)

Moreover, by pointing to record evidence Plaintiff believes supports greater limitations on her ability to sit, she misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," <u>Mastro</u>, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's finding regarding Plaintiff's ability to sit, and not whether other record evidence weighed against that finding, <u>see</u> <u>Lanier v. Colvin</u>, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The

---

[8] The ALJ "further limited [Plaintiff] to never crouching or crawling due to hip dysplasia and knee arthritis." (Tr. 23.)

[9] The ALJ noted that she did not find Dr. Landau's opinions fully persuasive, because the ALJ did not find Dr. Landau's "limitations in overhead reaching . . . supported by [his] examination" or consistent with "the evidence as a whole." (Tr. 22.)

16

fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Plaintiff's reliance on Dowling fares no better. In that regard, Plaintiff notes that "[t]he Fourth Circuit recently . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting, especially in light of a sedentary RFC, and, further, that ALJs have to perform a function-by-function analysis of contested and relevant functions." (Docket Entry 9 at 7 (citing Dowling, 986 F.3d at 388-89).) In Plaintiff's view, "[she] presented evidence that she could not perform the full postural demands of sitting required of the sedentary exertional level, and the ALJ should have adequately evaluated and her [sic] explained her findings regarding th[at] contested function." (Id.)

In Dowling, the claimant's treating physician had opined that the claimant's irritable bowel disease limited her "to sit for only 15 to 30 minutes at one time, and [less than] two hours total in an 8-hour working day." Dowling, 986 F.3d at 384 (internal quotation marks omitted). The Fourth Circuit found that the ALJ reversibly erred by discounting that opinion, id. at 386, because "it [wa]s far from apparent that the ALJ considered – or was even aware of – each of the [regulatory] factors [governing the evaluation of

17

opinion evidence]," id. at 385 (citing 20 C.F.R. 404.1527(c)). That opinion, together with Plaintiff's statements "throughout her administrative and judicial proceedings that her [irritable bowel disease] and anal fissure cause[d] her to experience discomfort when she s[at] for a prolonged period of time" led the Fourth Circuit to find that the ALJ failed to "properly assess the extent to which [the claimant]'s sitting problems impacted her ability to work" in the RFC analysis. Id. at 388. Significantly, the Fourth Circuit found three other deficiencies in the ALJ's RFC analysis, which led the court to find the ALJ's faulty RFC evaluation an additional ground for remand. See id. at 386-89.

In contrast, here, Plaintiff asserts that she has "presented evidence that she could not perform the full postural demands of sitting required of the sedentary exertional level" (Docket Entry 9 at 7), but fails to point the Court to any particular piece of evidence supporting her inability to sit for the two-hour intervals required in an eight-hour workday with standard breaks (see id.). Thus, unlike in Dowling, Plaintiff bases her alleged inability to handle the sitting required by sedentary-exertion work on her own subjective statements (see id. at 4 (citing Tr. 42 (reflecting Plaintiff's testimony that she could sit for about "[f]ive to ten minutes" at a time))), but, as discussed above, the ALJ found Plaintiff's subjective statements not entirely consistent with the evidence (see Tr. 20) and did not err in doing so.

18

In sum, Plaintiff's first and only assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this matter is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 13, 2024